296 So.2d 580 (1974)
CATALINA, INC., Appellant,
v.
BISCAYNE NORTHEAST CORPORATION OF FLORIDA, a Florida Corporation, Appellees.
No. 73-1473.
District Court of Appeal of Florida, Third District.
June 25, 1974.
Rehearing Denied July 18, 1974.
*581 Walton, Lantaff, Schroeder, Carson & Wahl and Calvin F. David, Miami, for appellant.
Myers, Kaplan, Porter, Levinson & Kenin and Peter H. Leavy, Miami, for appellees.
Before BARKDULL, C.J., and PEARSON and HAVERFIELD, JJ.
PEARSON, Judge.
The appellant, Catalina, Inc. was the tenant of the appellee Biscayne Northeast Corporation of Florida. The tenant moved out of the leased premises before the expiration of the term but before doing so tendered a sublease at a higher rent to the landlord. The sublease was rejected by the landlord, who then offered the premises at a higher rate and subsequently rented at that rate. The landlord sued the tenant for the rent due under the balance of the term of the lease, and the tenant counterclaimed for the loss of profit to it, i.e., the difference between the lease rent and the tendered sublease rent. After trial, a judgment was entered which denied relief upon the complaint and the counterclaim. The tenant has appealed and the landlord has filed cross-assignments directed to the denial of relief upon its complaint.
Basically, two questions are presented. First, on the appeal by the tenant, did the landlord wrongfully refuse to accept the sublease under a provision of the original lease that the tenant could sublet or assign only with the written consent of the landlord but that such consent should not be unreasonably withheld? Second, on the cross-assignments, did the landlord retake possession only for the purpose of re-renting for the benefit of the tenant and therefore was entitled to hold the tenant liable under the lease?
Under the lease agreement dated January 6, 1966, Catalina rented space for a business office and showroom on the eleventh floor in the Bay Tower Building (now commonly known as the Northeast Airlines Building) at 150 Southeast 2nd Avenue, Miami, Florida.
The term of the lease was from April 1, 1966 to March 31, 1974, with an option to renew for an additional five years. The agreed rental was $10,716 per year or $893 per month. This produced an annual rental at the rate of $5.25 per square foot. In April 1970, Catalina advised Biscayne that for business reasons it (Catalina) was planning to move  a move which eventually occurred on July 31, 1970. The lease between the parties contained a provision that Catalina could sublet or assign only with the written consent of Biscayne and with the additional proviso that such consent "shall not be unreasonably withheld." At the time in question, the price for downtown office space was on a material upturn so that $7.00 to $9.00 per square foot was the going rate for the space Catalina was occupying at $5.25 per square foot. Catalina therefore requested permission to sublet its space, but was met with advice from Biscayne (1) that it would not allow Catalina to make a profit on a sublease and (2) that it would attempt to find a new tenant for the space and thereupon cancel Catalina's lease. Catalina's proposed sublessee, at $7.00 per square foot or $1,136.33 per month, was Arthur Andersen & Co. That company already occupied space in the building but needed additional space. It was considered a good tenant by Biscayne who subsequently leased additional but less desirable space to it on the tenth floor for $7.89 per square foot.
During the negotiations with Catalina, Biscayne showed the Catalina space to some six other concerns and quoted it at from $7.00 to $9.00 per square foot. If any had taken it, Biscayne's intention was to keep the entire rent and cancel Catalina's lease. As previously stated, Catalina moved out on July 31, 1970. By claimed *582 oversight, Catalina inadvertently paid two additional months rent to Biscayne, amounting to $1,857.44. Though a refund was twice demanded by Catalina, it was never made.
After trial, the court set out its findings as follows:
* * * * * *
"1. There is no question that Biscayne Northeast Corporation (the Landlord) took over the premises July 31, 1970, for the purpose of renting said premises themselves, and not for the purpose of renting them on behalf of Catalina, Inc. (the Tenant). The premises were surrendered on July 31, 1970, by the Tenant and accepted by the Landlord, and a surrender by operation of law resulted based upon the Landlord's acts which were incompatible with the continued existence of the relationship of Landlord and Tenant.
"2. On Count One of the Counterclaim, the Court finds that the Counterclaimant, Catalina, did not sustain its burden as to damages. The Court is not satisfied with the actual terms of the contract between Catalina and Arthur Anderson & Company, and finds that they are in the area of speculation and that on that basis, damages on Count One of the Counterclaim are denied.
"3. As to Count Two of the Defendant's Counterclaim, the two months' rent totalling $1,857.44 was erroneously and inadvertently paid by the Tenant to the Landlord after July 31, 1970."
* * * * * *
On its appeal, the tenant, Catalina contends that the trial court erred in finding that its evidence as to its damages upon the refused sublease were so speculative as to be improper. We agree. The court, having determined that the consent to the sublease was improperly withheld by the landlord, ought not have refused damages for the breach when the evidence established (1) the rent the proposed sublessee was ready to pay for the remainder of the term, and (2) the rent called for by the original lease for the remainder of the term. The difference would not be speculative. Where the court's findings are contrary to the legal effect of the evidence, an appellate court must reverse. Lee Construction Corp. v. Newman, Fla.App. 1962, 143 So.2d 222.
Appellee urges that what the court actually found was that the proposed sublease was so indefinite that it could not be made the basis for recovery. This conclusion is in accordance with the language of the judgment but in our opinion such a finding is not supportable on this record. There is no doubt that the evidence established the amount of the rent and that the proposed sublessee was an acceptable tenant. The record also shows that the appellee frustrated the attempt to sublease for reasons of its own. The plaintiff was not required to perfect a transfer of a leasehold where the defendant landlord had by a refusal to honor the proposed transfer made the transfer impossible. Thus, in Walker v. Chancey, 96 Fla. 82, 117 So. 705, 707 (1928), it was stated as a general principle of law that one who prevents or makes impossible the performance or happening of a condition precedent, upon which his liability by the terms of a contract is made to depend, cannot avail himself of its nonperformance.
However, the appellee urges affirmance upon a ground not given by the trial court. It is stated that a landlord ought not be required to approve a sublease to a prospective tenant who is already an existing tenant of the landlord. This argument would have validity if the proposed sublease would have destroyed or adversely affected a lease already in existence. It has no validity where, as here, the proposed *583 sublease was for additional space. The landlord was not shown to have an exclusive right to lease directly to his own tenants. It contracted to approve or refuse a sublease upon reasonable grounds, and a refusal upon grounds without legal basis is unreasonable. In effect, appellee urges that its own tenants were not rental prospects for anyone except itself. This position is not shown to be supported by the contract between the appellant and the appellee nor does it have validity based upon any principle of law to which our attention has been called.
Therefore, the finding of the court that appellant is not entitled to damages for the landlord's refusal to approve the sublease is reversed.
The appellee, cross-appellant, urges that the trial judge incorrectly found that as landlord it took possession of the leased premises "... not for the purpose of renting them on behalf of Catalina, Inc. (the tenant)." This finding is amply supported by the record. This is particularly true in view of the admitted fact that the landlord offered the premises only at an increased rent.
In addition, the cross-appellant urges that the court incorrectly found that two months rent for a period after the tenant had moved was mistakenly paid. The evidence before the trial court, if believed by the trier of fact, was sufficient to support this finding. An appellate court will not reverse a finding thus supported. See Williams v. Kane, Fla. 1956, 88 So.2d 599.
Therefore, the judgment is affirmed in part and reversed in part and the cause is remanded for the entry of an amended judgment for the defendant upon its counterclaim in accordance with the views herein expressed.
Affirmed in part, reversed in part, and remanded.